Case 4:20-cv-02543 Document 50 Filed on 06/01/21 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
June 02, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SILVERTHORNE SEISMIC, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-20-2543 |
| | § | |
| STERLING SEISMIC SERVICES, LTD., | § | |
| D/B/A STERLING SEISMIC & RESERVOIR | § | |
| SERVICES, | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Sterling Seismic Services, Ltd. d/b/a Sterling Seismic & Reservoir Services' ("Sterling") amended motion to dismiss (Dkt. 18). Plaintiff Silverthorne Seismic, LLC ("Silverthorne") responded (Dkt. 22), and Sterling replied (Dkt. 23). After reviewing the motion, response, reply, and applicable law, the court is of the opinion that Sterling's motion to dismiss should be GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

Silverthorne conducted two seismic surveys in the Scoop region of Oklahoma.[1] Dkt. 13 at 4. The first, dubbed the "North Scoop 3D Survey," was conducted in 2016 and is not at issue in this case. *Id.* at 10. The second, called the "South Scoop 3D Survey," covered an area adjacent to the first and was conducted from 2018 to 2019. *Id.* at 4–5. One of Silverthorne's customers, Casillas Petroleum Resource Partners II, LLC ("Casillas"), provided some financial backing for the South Scoop survey. *Id.* at 5. In return, Silverthorne gave Casillas the right to license data

---

[1] All facts in this section are taken from Silverthorne's complaint (Dkt. 13) and are assumed to be true for the purpose of ruling on Sterling's Rule 12(b)(6) motion to dismiss.

from the survey at a discounted rate through what Silverthorne refers to as a "Participation Agreement." *Id.*

In October 2018, Casillas exercised that right, licensing 166.5 square miles of the South Scoop survey. The agreement was memorialized in a Master Geophysical Data-Use License Agreement and a Supplemental Agreement (collectively, the "License Agreement"). Pursuant to that agreement, Silverthorne was required to deliver its data to Sterling, who would process the data for Casillas.[2] *Id.* The License Agreement also contemplated that Sterling would sign a Non-Disclosure Agreement ("NDA") covering its use of the South Scoop survey data, and Sterling did indeed sign an NDA. *Id.*

Silverthorne believes that Casillas and Sterling also signed a seismic reprocessing agreement ("Reprocessing Agreement"), which most likely included a fee based on the size of the licensed area of the South Scoop survey. *Id.* at 6.

In October 2019, Silverthorne gave Sterling the "raw field data for the entire South Scoop Survey . . . along with an ESRI shape file." *Id.* A shape file is "an industry standard tool used by seismic data processors to identify the exact geographical area within a seismic survey to be reprocessed and delivered to the licensee." *Id.* Sterling was supposed to reprocess and deliver only the data corresponding to the boundaries outlined in the shape file.

In the NDA Sterling signed, it agreed not to disclose confidential information (a term defined in the NDA) to anyone except (1) its representatives, if necessary to reprocess the data, or (2) "such person as Silverthorne hereafter agrees, in writing, may receive such Confidential Information." *Id.* at 7.

---

[2] Silverthorne seems to claim in different parts of its complaint that this obligation to deliver data to Casillas's chosen reprocessor comes from two different agreements, the Licensing Agreement and the Participation Agreement. *See* Dkt. 13 at 5, 11. It may be that the obligation was in one, the other, or both, but it is immaterial to the analysis.

At the end of 2019 and the beginning of 2020, Sterling began to deliver reprocessed seismic data to Casillas. *Id.* at 9. It did not, however, obtain Silverthorne's consent in accordance with the NDA or provide copies to Silverthorne. *Id.* After attempting and failing repeatedly to get updates from Sterling, Silverthorne ordered Sterling to return the data and provide a copy of the reprocessed data. *Id.* Sterling declined to provide the reprocessed data without Silverthorne paying a reprocessing fee, and so Silverthorne obtained the reprocessed data from Casillas. *Id.*

Silverthorne compared the shape file to the reprocessed data and learned that "Sterling had erroneously delivered to Casillas an additional 15.06 square miles of unlicensed seismic data." *Id.* To make matters worse, Casillas had already begun using the reprocessed data to market the land to various oil and gas exploration companies. *Id.* at 10. In total, Casillas displayed the unlicensed data to at least fifteen different third-party exploration companies. *Id.*

Silverthorne notified Sterling of the breach and demanded compensation, but Sterling did not respond. *Id.* at 10. Sterling did, however, appear to take corrective measures. *Id.* It claimed not to have yet delivered the "final processing" data to Casillas. *Id.* And despite previously being unwilling to show the reprocessed data to Silverthorne without payment of a reprocessing fee, Sterling now invited Silverthorne to "verify and approve the accuracy" of the "final processing data." *Id.* Silverthorne believes this was a ruse, an "attempt to backfill the record for its prior errors." *Id.* at 11. All unlicensed data had been removed from the "final processing data," confirming appropriate use of the shape file. *Id.*

## II. Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint,

3

courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

### III. ANALYSIS

*A. Breach of Contract*

The elements of a breach of contract action are: (1) a valid contract exists; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (citation omitted). In its motion to dismiss, Sterling asserts that Silverthorne has failed to adequately allege that a valid contract exists or that Sterling breached that contract. Dkt. 18 at 8. Silverthorne alleges the existence of a contract and breach under three different theories. Dkt. 13 at 11–14. First, it argues that Sterling breached a trilateral agreement between the three entities consisting of the Participation Agreement, License Agreement, NDA, ESRI shape file, and Reprocessing Agreement. *Id.* at 11–12. Second, it argues that Sterling made an agreement, collateral to the NDA, to use the shape file to ensure it only reprocessed and

4

delivered data from the licensed area of the South Scoop to Casillas. Dkt. 22 at 9. Third, it argues that Sterling breached the NDA as a standalone agreement. Dkt. 13 at 12; Dkt. 22 at 4.[3]

*1. Trilateral Agreement*

*i. Existence of a Contract*

"Texas courts have long recognized that, under appropriate circumstances, 'instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other.'" *Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020) (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)). "Where appropriate, 'a court may determine, as a matter of law,' that multiple separate contracts, documents, and agreements 'were part of a single, unified instrument.'" *Id.* "In determining whether multiple agreements are part and parcel of a unified instrument, a court may consider whether each written agreement and instrument was 'a necessary part of the same transaction.'" *Id.* (quoting *Bd. of Ins. Comm'rs v. Great S. Life Ins. Co.*, 239 S.W.2d 803, 809 (Tex. 1951)). "But when construing multiple documents together, courts must do so with caution, bearing in mind that tethering documents to each other is 'simply a device for ascertaining and giving effect to the intention of the parties and

---

[3] There is some confusion over which contract theories are properly before the court. For instance, the complaint urges a third-party-beneficiary theory, but then Silverthorne never mentions it again. Dkt. 13 at 12–13. Conversely, the collateral-agreement theory appears for the first time in Silverthorne's response. Dkt. 22 at 9. Sterling also seeks to foreclose one of Silverthorne's theories by asserting that "Silverthorne's amended complaint does not allege that the Nondisclosure Agreement was a standalone contract that was breached." Dkt. 23 at 2. Ultimately, the facts alleged in the complaint are what is important, not the specific theories alleged. *See Johnson v. City of Shelby*, 574 U.S. 10, 11, 135 S. Ct. 346 (2014) ("Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' . . . they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."). It is true that Silverthorne's arguments on this point are somewhat disorganized. After analyzing the complaint, motion, response, and reply, however, the court has determined that Silverthorne truly pursues only three contract theories: breach of a trilateral agreement, breach of the NDA and consistent collateral agreement, and breach of the NDA alone. The court thus analyzes those theories in turn, declining to analyze the third-party beneficiary theory because Silverthorne has abandoned it.

cannot be applied arbitrarily and without regard to the realities of the situation.'" *Id.* at 94–95 (citations omitted).

Here, on the facts alleged, the court finds that the License Agreement, NDA, and Reprocessing Agreement can be construed together because they are all necessary parts of the same transaction. Fundamentally, that transaction involves the provisioning of reprocessed seismic data covering only the licensed area from Silverthorne to Casillas by way of Sterling. Silverthorne alleges the following details about the agreements that constitute the parties' contract: In the Licensing Agreement, Silverthorne promised to deliver raw seismic data to a third party of Casillas's choosing for reprocessing. Dkt. 13 at 5. In return, Casillas paid money to license the data, gave assurances that the third party would sign an NDA, and guaranteed that Silverthorne would receive a copy of the reprocessed data. *Id.* Silverthorne delivered the raw data to Sterling along with the shape file in return for Sterling's promise not to disclose that data. *Id.* at 6. Finally, Casillas entered into a Reprocessing Agreement with Sterling, in which it paid a price proportional to the size of the area licensed by Casillas in return for a promise to reprocess only that area. *Id.* at 5–6. Without any of these instruments, the transaction would not be complete. *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840 (construing two city ordinances, two corporate "formal acceptances," and a school board resolution together as a settlement agreement). Therefore, they can be construed together.

### *ii. Effect of Merger Clause*

Sterling argues that the merger clause in the NDA precludes construing the documents together. Dkt. 18 at 8–9. It relies exclusively on *Rieder v. Woods* for this argument. *Rieder*, 603 S.W.3d 86. This case is distinguishable from *Rieder*, however. In *Rieder*, the plaintiffs sought to enforce a forum selection clause in one contract against defendants who had not signed that

contract but had signed another. *Id.* at 88–89. The plaintiffs argued that the contracts should be construed together. The Supreme Court of Texas held that because the contracts each had distinct purposes, different governing law, and their own merger clauses, it was constrained from construing them together. *Id.* at 97. Not only did *both* contracts have merger clauses, but the other factors all indicated that the two contracts represented completely separate transactions. Here, Sterling argues that the existence of a merger clause in only one of the agreements should lead the court to the same conclusion. The court finds that this is not enough to preclude construing the agreements at issue together. The ultimate test is whether the agreements are a part of the same transaction and the court is persuaded that Silverthorne has pled sufficient facts showing that they are.

    *iii. Breach*

Under the trilateral contract theory, Silverthorne has pled sufficient facts indicating that Sterling breached its obligation to only reprocess the licensed data. Silverthorne alleges that Casillas and Sterling entered a Reprocessing Agreement, which the court has found could plausibly be part of a multilateral contract between the parties. Dkt. 13 at 5–6. In that agreement, Sterling allegedly agreed to reprocess only the licensed area and deliver it to Casillas. *Id.* Silverthorne then gave the raw field data to Sterling, along with the shape file defining the licensed area. *Id.* Sterling then signed the NDA outlining its promise to keep certain data confidential. Finally, Silverthorne alleges that Sterling violated these terms by reprocessing and "erroneously deliver[ing] to Casillas an additional 15.06 square miles of unlicensed seismic data." *Id.* at 9. Silverthorne has adequately pled a breach of the trilateral agreement.

*2. Collateral Agreement*

*i. Existence of a Contract*

A second theory that Silverthorne advances is that Sterling made an agreement, collateral to the NDA, that it would use the shape file to reprocess and deliver only the licensed area to Casillas. Dkt. 22 at 7. The existence of the NDA is not in dispute. What is in dispute is the validity of the obligation to use the shape file. Sterling asserts that the NDA (1) "does not apprise Sterling of the notion that Casillas had not licensed all of the South Scoop 3D Survey data"; (2) "does not state that Sterling must remove data located outside the boundaries" of the licensed area; and therefore (3) there is only one reasonable conclusion: "the data provided by Silverthorne may be reprocessed and provided to Casillas." Dkt. 18 at 12.

Silverthorne disagrees, contending that Sterling made a collateral agreement to use the shape file to reprocess only the seismic data for the licensed area. Dkt. 22 at 8–9. The issue, then, is whether the merger clause in the NDA extinguished this alleged agreement to use the shape file.

*ii. Effect of Merger Clause*

"When parties have entered into a valid, written, integrated contract, the parol evidence rule precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with the written contract." *West v. Quintanilla*, 573 S.W.3d 237, 243 (Tex. 2019) (citations omitted). "Despite its label, the parol evidence rule precludes enforcement of an alleged agreement, not merely the admission of evidence, and it does so regardless of whether the alleged agreement is oral or written." *Id.* (citing *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (Tex. 1958)).

A contract is "integrated," triggering the parol evidence rule, if it "constitut[es] a final expression of one or more terms of an agreement." *Id.* (citing *Integrated Contract*, *Black's Law*

*Dictionary* (10th ed. 2014)). A contract is considered only *partially* integrated if it is only integrated as to certain parts of the parties' agreement—and "not as to all prior or contemporaneous agreements between the parties." *Id.* Here, the NDA is only partially integrated because, by its terms, it "constitutes the entire understanding between the Parties with respect to [only] the *subject matter hereof*." Dkt. 13-1 at 4 (emphasis added). Thus, it "does not purport to address or supersede agreements related to other matters." *West*, 573 S.W.3d at 244 (citing Restatement (Second) of Contracts § 210 cmt. a (Am. L. Inst. 1981)).

One exception to the parol evidence rule is a collateral agreement. The parol evidence rule "does not preclude enforcement of an agreement that is 'collateral' to and not inconsistent with" the integrated agreement. *Id.* at 245 (citations omitted). A collateral agreement can take two different forms. *Hubacek*, 317 S.W.2d at 172. In both cases the agreement must not be inconsistent with the integrated contract. *Id.* Then, it must also either be (1) made for separate consideration; or (2) "such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."[4] *Id.*

Sterling contends that the NDA affirmatively allowed it to deliver all South Scoop data to Casillas. Under this reading, Sterling argues, the limiting instructions contained in the alleged collateral agreement are inconsistent with the NDA. Silverthorne argues that the NDA memorialized only "Sterling's agreement to *not disclose* Silverthorne's confidential trade-secret information." Dkt. 18 at 7. The agreement to use the shape file to reprocess only the licensed area, therefore, concerned a related but consistent matter. *Id.* The court finds that Silverthorne has the better argument. The alleged collateral agreement to use the shape file is not inconsistent with

---

[4] In *West v. Quintanilla*, the Supreme Court of Texas wrote that a collateral agreement must be both supported by separate consideration *and* one that the parties might naturally make separately. *West*, 573 S.W.3d at 245. The decision cites *Hubacek*'s discussion of the Restatement of the Law of Contracts, but that discussion uses "or" instead of "and" and is thus disjunctive, requiring only one or the other. *Hubacek*, 317 S.W.2d at 172.

9

the "Use of Confidential Information" provision of the NDA. That provision does not grant Sterling the right to disclose all of the seismic data from the South Scoop to Casillas. Rather, it limits the use of the raw data to the task of reprocessing. Sterling is proscribed from using it for any "other purpose."

While Silverthorne does not allege any separate consideration for the collateral agreement, the court finds support for the idea that it is an agreement the parties might naturally make separately under the circumstances. Silverthorne alleged that it provided the shape file "in accordance with industry standards and customs." Dkt. 13 at 6. It also alleges that Sterling should have been familiar with the use of shape files and "the need to process and deliver only seismic data within the identified licensed area." *Id.* Finally, Silverthorne alleges that it "advised" Sterling that the shape file delineated Casillas's licensed area. The alleged facts suggest that this is a fairly common practice in the industry, and thus that it is an agreement that is naturally made in reprocessing transactions.

In sum, the merger clause found in the NDA means that the contract is integrated, but only with respect to Sterling's obligation not to disclose any confidential information. Sterling's alleged agreement to use the shape file and deliver only reprocessed data reflecting the licensed area is not barred by the parol evidence rule, though, because it falls within an exception to that rule for consistent collateral agreements. The court finds that Silverthorne has alleged sufficient facts showing the existence of a contract under this theory as well.

*iii. Breach*

Under the collateral agreement theory, Silverthorne has pled sufficient facts to show that Sterling breached its obligation to reprocess and delivery only the licensed data. Silverthorne alleges, and the court finds plausible, that it made an agreement with Sterling that was collateral

10

to the NDA and required Sterling to use the shape file to reprocess for Casillas the seismic data from the licensed area of the South Scoop survey. *Id.* Silverthorne then gave the raw field data to Sterling, along with the shape file defining the licensed area. *Id.* Silverthorne alleges that Sterling violated these terms by reprocessing and "erroneously deliver[ing] to Casillas an additional 15.06 square miles of unlicensed seismic data." *Id.* at 9. Silverthorne has adequately pled a breach of the NDA and its collateral agreement.

### 3. Breach of NDA

#### i. Existence of a Contract

Finally, Silverthorne alleges a simple breach of an explicit term of the NDA, asserting that "the NDA does not authorize Sterling to provide the reprocessed data to Casillas without Silverthorne's prior consent." Dkt. 22 at 13. The NDA prohibits Sterling from disclosing any "Confidential Information" to any entity other than its own representatives unless Silverthorne has first agreed in writing. Dkt. 13 at 7. The parties do not dispute that the NDA is a valid contract.

#### iii. Breach

Silverthorne asserts that "[i]n early November 2019 and again in January 2020, Sterling began its delivery of the reprocessed seismic data to Casillas without first obtaining Silverthorne's written consent under section three of the NDA." *Id.* at 9. It also claims that Sterling did not provide it with a copy of the reprocessed data for "review and approval" before delivering the data to Casillas. *Id.* After unsuccessfully trying multiple times to get copies of the deliverables from Sterling, Silverthorne finally had to get the data from Casillas. *Id.* When it did, it found that Sterling had "erroneously delivered to Casillas an additional 15.06 square miles of unlicensed seismic data." *Id.*

Taken as true, these allegations are enough to show a breach of the NDA.

11

*B. Negligence*

"The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citations omitted). More precisely, "there is not one economic loss rule broadly applicable throughout the field of torts, but rather several more limited rules that govern recovery of economic losses in selected areas of the law." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) (quoting Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 534–35 (2009)). The origin of the rule in Texas is in the products liability context, where the Supreme Court of Texas has held that "when no physical injury has occurred to persons or other property, injury to the defective product itself is an economic loss governed by the [breach of warranty provisions of the] Uniform Commercial Code." *See id.* at 417 (quoting *Mid Continent Aircraft Corp. v. Curry Cnty. Spraying Serv., Inc.*, 572 S.W.2d 308, 312–313 (Tex. 1978)) (alteration in original). In those situations, there can be no recovery under a strict liability theory. *Id.*

Next, the Texas Supreme Court "examined the difference between contract duties and tort duties arising under contractual relationships." *Id.* (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). It held that when a plaintiff seeks "damages for breach of a duty created under contract, as opposed to a duty imposed by law, tort damages [a]re unavailable." *Id.* (citing *Sw. Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991)). Additionally, "[w]hen the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone." *Jim Walter Homes, Inc.*, 711 S.W.2d at 618.

Most recently, the rule was extended to cover claims for negligence by a general contractor working on a construction project against a professional responsible for designing and planning the project. *LAN/STV v. Martin K. Eby Construction Co.*, 435 S.W.3d 234 (Tex. 2014). Even though the parties had not contracted with each other, the Supreme Court of Texas held that the economic loss rule applied because "the economics of the construction site" are such that "the parties are in a position to protect themselves through bargaining." *Id.* at 248 (quoting William Powers, Jr. & Margaret Niver, *Negligence, Breach of Contract, and the "Economic Loss" Rule*, 23 Tex. Tech. L. Rev. 477, 481 (1992)). "Though the parties do not necessarily have contracts with each other, they typically all have contracts with the owner, or subcontracts with someone who does . . . ." *Id.*

To summarize the rule applicable to the instant motion, a party to a contract cannot recover on a negligence theory for a breach of the contract unless (1) the source of the duty breached is independent of the contract (e.g., from common law); and (2) the injury is to more than simply the subject matter of the contract. *DeLanney*, 809 S.W.2d at 494.

Silverthorne's negligence cause of action alleges that Sterling breached a "common law duty to not use or disclose the confidential trade-secret seismic data." Dkt. 22 at 14–15. Because Silverthorne's "negligence claim relies on the same conduct that gives rise to its breach of contract claim," Sterling argues, "any duty to keep the alleged unlicensed data secret comes from the [NDA]." Dkt. 18 at 14. Silverthorne disagrees, alleging that Sterling's duty not to disclose "arises independently from the contractual obligations it owed Silverthorne." Dkt. 22 at 14. Silverthorne contends that its seismic data is a trade secret under Texas common law and that "a party who gain[s] trade secret or proprietary information from the owner via their confidential relationship ***assumes a duty*** not to use the information to the owner's detriment." *Id.* at 15.

13

It is not the duty element that is dispositive here, though. Rather, it is the nature of the injury. Assuming without deciding that Sterling owes Silverthorne a noncontractual duty to maintain the secrecy of its seismic data, the injury alleged is merely the economic loss to Silverthorne's contractual expectancy. Silverthorne entered into the NDA to prevent the unauthorized disclosure of its seismic data, whether that meant the disclosure of unlicensed portions of the South Scoop survey to Casillas or the disclosure of any of the data to others. It is immaterial which duty was allegedly breached because the consequence was the same. Silverthorne sought to avoid the disclosure of its data. That data was disclosed, and Silverthorne lost the ability to license the data to those to whom it was disclosed. Therefore, it lost only its contractual expectancy. Also supporting this conclusion is the fact that it claims the exact same amount of economic damages ($9,638,400) under each claim. *See MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 397 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that MEMC's claim sounded solely in contract, based in part on the fact that "at trial, MEMC sought the same economic damages—$23 million in consequential damages—for both its negligence and breach of contract claims.").

Because Silverthorne alleges no injury beyond the economic loss of a contractual expectancy, its negligence claim is barred by the economic loss rule and must be dismissed. *DeLanney*, 809 S.W.2d 493.

*C. Federal Trade-Secret Misappropriation*

The Defend Trade Secrets Act (DTSA) provides a federal cause of action for trade secret misappropriation. 18 U.S.C. § 1836(b) (private civil actions). To state a claim under the DTSA, a plaintiff must allege: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. *See id.* Sterling does not contest the third element, so the court will only analyze whether

14

Silverthorne has adequately alleged facts showing that the seismic data at issue is a trade secret and that Sterling misappropriated it. *See* Dkt. 18 at 14–17.

*1. Trade Secret*

Whether a trade secret exists is a question of fact." *See GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 492 (5th Cir. 2016). Under the DTSA, trade secrets include: "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" as long as two conditions are met. 18 U.S.C. § 1839(3). First, the owner must have "taken reasonable measures to keep such information secret." *Id.* § 1839(3)(A). Second, the information must derive "independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* § 1839(3)(B).

Sterling argues that the seismic data at issue is "not a trade secret because the value . . . is derived solely from disclosing" it and because Silverthorne "does not try to keep it secret after selling it." Dkt. 18 at 14–15. The court construes this as a challenge to the conditions in § 1839(3)(A)–(B) rather than a dispute as to whether seismic data is the type of information that is generally included in the definition of trade secret under the DTSA. Because the Fifth Circuit has declared that it is a question of fact whether a trade secret exists, the court believes that minimal facts can satisfy the Rule 12(b)(6) burden as long as they are plausible. Here, Silverthorne has more than met that standard.

First, the Supreme Court of Texas held in a common-law trade-secret misappropriation case, *In re Bass*, that "seismic data and its interpretations are trade secrets." *In re Bass*, 113 S.W.3d 735, 742 (Tex. 2003). While its inquiry required a fact-specific determination under a six-factor test from the Restatement (Third) of Unfair Competition, it also noted that "[g]eologic seismic data is given industry-wide trade secret protection in oil and gas trade. Other jurisdictions that have considered geological seismic data have adopted the industry's position and deemed this data trade secrets." *Id.*

This court is in no way bound in its interpretation of the DTSA to accept this Texas common-law trade-secret misappropriation holding. But Texas courts "typically apply the standards the Texas Supreme Court developed for older common law trade secret claims" to claims under the Texas Uniform Trade Secrets Act (TUTSA). *Utex Indus., Inc. v. Wiegand*, No. H-18-1254, 2020 WL 873985, at *8 (S.D. Tex. Feb. 21, 2020) (Lake, J.). And federal courts in this district have routinely found that the DTSA and the TUTSA have identical definitions of "trade secret" and analyzed claims under both statutes together or used TUTSA interpretations to guide DTSA interpretations. *See, e.g.*, *Utex Indus., Inc.*, 2020 WL 873985, at *8 ("The definition of a trade secret under the DTSA and TUTSA are identical."); *Yellowstone Landscape v. Fuentes*, No. 4:20-1778, 2020 WL 4547150, at *4 (S.D. Tex. Aug. 6, 2020) (Atlas, J.) ("To prove a violation of either statute, Plaintiff must show . . . ."); *Red Ball Tech. Gas Servs., LLC v. Precise Standards & Sols., Inc.*, No. 4:17-CV-2090, 2018 WL 276467, at *4 (S.D. Tex. Jan. 1, 2018) (Ellison, J.) ("The foregoing analysis of Red Ball's claim for misappropriation of trade secrets under Texas law applies also to Red Ball's claim under federal law."). For these reasons, the court finds the *In re Bass* holding persuasive.

Nonetheless, the court now addresses Sterling's argument head on. Sterling argues that Silverthorne's seismic data is not a trade secret because its value is derived purely from selling it, and that after disclosure, Silverthorne does not attempt to protect its secrecy. Dkt. 18 at 14–15. But Silverthorne alleges that it derives value from *licensing* the data, not *selling* it. Dkt. 22 at 19–20. Additionally, it claims that it protects the data after licensing by only providing it to "licensees or seismic data processors who execute non-disclosure agreements." *Id.* at 19–20. The NDA Sterling signed, for example, requires it to refrain from making unauthorized copies, return all confidential seismic data within ten business days of completing the reprocessing, remove and destroy any remnants of the data within thirty days, and confirm compliance in writing. Dkt. 13-1 at 2–3. The court finds Sterling's arguments on this point unavailing. Looking to the text of § 1839(3)(B), licensing the data and requiring licensees and reprocessors to sign nondisclosure agreements is precisely what is meant by "deriv[ing] independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can" benefit from using or disclosing the data. 18 U.S.C. § 1839(3)(B). Moreover, it is clear to the court that Silverthorne has "taken reasonable measures to keep such information secret." *See id.* § 1839(3)(A).

In sum, the law that courts in this district often look to when construing the DTSA "trade secret" definition explicitly recognizes seismic data as a trade secret. So do many other jurisdictions. *See, e.g.*, *In re Bass*, 113 S.W.3d at 740–41 (discussing holdings from the Fifth Circuit, Alabama Supreme Court, and Indiana Supreme Court); *In re Virgin Offshore USA, Inc.*, No. 13-79, 2013 WL 4854312, at *3 (E.D. La. Sept. 10, 2013) (collecting cases). Further, Silverthorne's use of the data comports with the DTSA's requirements that the information's owner take reasonable measures to keep the data secret and that the information derive independent

value from being secret. Therefore, the court finds that Silverthorne has plead sufficient plausible facts to show that its seismic data is a trade secret.

### 2. *Misappropriation*

The DTSA defines "misappropriation" to include the "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B). To meet pleading requirements for the misappropriation element in this case, then, Silverthorne would need to allege (1) disclosure; (2) without consent; by a person who (3) knew they had a duty to maintain the information's secrecy or limit its use.

Sterling asserts that "the Nondisclosure Agreement contemplated and allowed for disclosure of the reprocessed data" to Casillas. Dkt. 18 at 16. "Thus, there was no disclosure by improper means." *Id.* The court finds this unpersuasive.

Silverthorne has alleged that Sterling had a duty, arising out of its contractual relationship with Silverthorne, to deliver reprocessed data for only the licensed area to Casillas, the licensee, and to do so only after receiving Silverthorne's consent. At the very least, Silverthorne has alleged that Sterling failed to fulfill its obligation to seek consent from Silverthorne before delivering the data to Casillas. It has also alleged sufficient facts to show that Sterling violated this duty by disclosing the unlicensed portion of the South Scoop survey to Casillas. This sequence of events matches up perfectly with the DTSA misappropriation elements.

Therefore, the court finds that Silverthorne has pled plausible facts raising a right to relief above the speculative level on its DTSA trade-secret misappropriation claim. Consequently, Sterling's arguments on this claim fail.

## IV. CONCLUSION

Sterling's amended motion to dismiss (Dkt. 18) is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to the negligence claim, which is hereby DISMISSED. It is otherwise DENIED.

Signed at Houston, Texas on June 1, 2021.

_____
Gray H. Miller
Senior United States District Judge