United States District Court
Southern District of Texas
**ENTERED**
October 07, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| SILVERTHORNE SEISMIC, LLC, | § |
| | § |
| *Plaintiff,* | § |
| | § |
| v. | §     CIVIL ACTION H-20-2543 |
| | § |
| STERLING SEISMIC SERVICES, LTD., | § |
| D/B/A STERLING SEISMIC & RESERVOIR | § |
| SERVICES, | § |
| | § |
| *Defendant.* | § |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are three cross-motions for partial summary judgment and two motions to strike. Dkts. 34, 51, 53, 73, 83. Plaintiff Silverthorne Seismic, LLC ("Silverthorne") filed a motion for partial summary judgment on liability for its breach of contract claims and the Defend Trade Secrets Act ("DTSA") claim. Dkt. 53. Defendant Sterling Seismic Services, Ltd. d/b/a Sterling Seismic & Reservoir Services ("Sterling") filed a motion for partial summary judgment on the DTSA claim (Dkt. 34), a motion for partial summary judgment on the breach of contracts claims and the exemplary damages and attorneys' fees for the DTSA claim (Dkt. 51), a motion to strike Silverthorne's motion for partial summary judgment (Dkt. 73), and a motion to strike Silverthorne's reply brief (Dkt. 83). After reviewing the motions, responses, replies, local rules, court procedures, and applicable law, the court is of the opinion that Sterling's motion for partial summary judgment on the breach of contracts claims and on the exemplary damages and attorneys' fees for the DTSA claim (Dkt. 51) should be GRANTED IN PART AND DENIED IN PART, and the remaining four motions (Dkts. 34, 53, 73, 83) should be DENIED.

# I. Background

This case concerns the disclosure of Silverthorne's seismic data to a third party.  Dkt. 53, Ex A.  Bart Wilson is president and founder of Silverthorne and Silverthorne Seismic II, LLC ("Silverthorne II").  Dkt. 47, Ex. 3.  Silverthorne II generally conducts seismic surveys, and Silverthorne generally holds the seismic data acquired by Silverthorne II.  *Id.*  In 2016, Silverthorne II conducted a 390 square mile seismic survey in the Scoop region of Oklahoma (the "North Scoop Survey").  Dkt. 53, Ex. A.  In 2018–19, Silverthorne II conducted a second seismic survey covering 178 square miles adjacent to the North Scoop Survey (the "South Scoop Survey").  *Id.*  Silverthorne II contracted with Dawson Geophysical Company ("Dawson") to acquire the seismic data for the South Scoop Survey.  Dkt. 47, Ex. 2.  Silverthorne II and Dawson then contracted with GoldStar Land Services, LLC to obtain the necessary permits.  Dkt. 47, Ex. 3.  On September 12, 2018, Casillas Petroleum Resource Partners II, LLC ("Casillas") obtained a license to the seismic data for a 166.5 square mile area from the North Scoop Survey and South Scoop Survey.  Dkt. 53, Ex. A-2.  On October 3, 2019, Silverthorne II assigned its rights to the seismic data to Silverthorne.  Dkt. 34, Ex. 2.

Silverthorne next contracted with DownUnder GeoSolutions (Americas), LLC to process the raw seismic data.  Dkt. 53, Ex. A.  Casillas requested that Sterling also process the raw seismic data to provide Casillas with two sets of processed data.  *Id.*  To that end, Sterling and Silverthorne executed a nondisclosure agreement on May 3, 2019, restricting the disclosure of seismic data from the North Scoop Survey to the area Casillas had licensed.  *Id.*  In October 2019, Silverthorne directed Dawson to deliver the raw field data for the entire South Scoop Survey to Sterling as well.  *Id.*  On October 16, 2019—after transmitting the raw data for the South Scoop Survey—

Silverthorne and Sterling executed a second nondisclosure agreement regarding the South Scoop Survey.  Dkt. 51, Ex. 12.  Silverthorne included a shapefile showing the area Casillas had licensed with the second nondisclosure agreement.  Dkt. 53, Ex. A.

Sterling delivered a preliminary version of the processed data to Casillas in November of 2019.  Dkt. 68, Ex. 2.  In February 2020, Casillas provided Silverthorne with a copy of Sterling's preliminary version of the processed data.  Dkt. 53, Ex. A.  Upon examination, Silverthorne found that process data contained 15.06 square miles of data not covered by Casillas' license.  *Id.*  Casillas had previously decided not to license the seismic data from this 15.06 square mile section before the disclosure took place.  Dkt. 51, Ex. 1.  Casillas may have further disclosed the unlicensed data to as many as 22 other parties.  Dkt. 68, Ex. 3.

## II.  LEGAL STANDARD

### A.  Local Rules and Court Procedures

Under Local Rule 7.4, "[u]nless otherwise directed by the presiding judge, a party who has filed an opposed motion may file a brief within 7 days from the date the response is filed."  S.D. Tex. L.R. 7.4.  In its procedures, the court has directed that "[r]eply briefs filed by movants will be considered if submitted before the court rules on the motion."  J. Miller Ct. P. 6(A)(5).

"The court requires concise, pertinent, and well organized memoranda of law."  J. Miller Ct. P. 7.  The court has directed that "[w]ithout leave of court, any memorandum shall be limited to 25 pages."  *Id.*

### B.  Summary Judgment

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. ANALYSIS

#### A. Motions to Strike

##### 1. Motion to Strike Silverthorne's Reply Brief

Sterling moves to strike Silverthorne's reply brief (Dkt. 79) as untimely.  Dkt. 83. Silverthorne filed its reply brief 15 days after Sterling filed its response. *See* Dkts. 73, 79.  Local Rule 7.4 permits filing a reply brief within 7 days of the response unless otherwise directed by the court.  S.D. Tex. L.R. 7.4.  The court wishes to stress the importance of timeliness; however, the court has directed that "[r]eply briefs filed by movants will be considered if submitted before the court rules on the motion."  J. Miller Ct. P. 6(A)(5).  Silverthorne filed its reply brief before the court ruled on its motion for partial summary judgment. *See* Dkts. 53, 79.  Therefore, Sterling's motion to strike the reply brief (Dkt. 83) is DENIED.

##### 2. Motion to Strike Silverthorne's Motion for Partial Summary Judgment

Sterling objects to Silverthorne's motion for partial summary judgment (Dkt. 53) for exceeding the page limit and moves to strike.  Dkt 73.  A 25-page limit applies to memoranda of

law.   J. Miller Ct. P. 7.   Silverthorne incorporated arguments from its previous response brief (Dkt. 47) rather than presenting them in full.  Dkt. 53.  Sterling argues that the incorporated pages must count towards the page limit and moves to strike the motion for exceeding the 25-page limit. Dkt. 73.  The court disagrees.

The court is considering all the briefing for three motions for partial summary judgment concurrently.   *See* Dkts. 34, 47, 48, 51, 53, 68, 73, 74, 79.   The incorporated response is part of that briefing.  *See* Dkts. 47, 53.  The court finds it inappropriate to strike a motion for incorporating arguments it was going to consider anyway.  Therefore, Silverthorne's motion to strike (Dkt. 73) is DENIED.

**B.  Cross-Motions for Partial Summary Judgement**

There are two types of claims remaining in this lawsuit: the breach of contract claims and the DTSA claim.  Dkt. 50.  The parties have filed cross-motions for partial summary judgment on each type.  Dkts. 34, 51, 53.

**1.  Breach of Contract Claims**

Under Texas law, the elements for a breach of contract claim are "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).  Sterling moves for partial summary judgment on the breach of contract claims arguing that there is no evidence Silverthorne sustained damages due to the breach.  Dkt. 51.  In addition, Sterling argues partial summary judgment is appropriate for the breach of contract claim based on a trilateral agreement theory because the merger doctrine

precludes enforcement. *Id.*  Finally, Sterling moves for attorney's fees as a prevailing party under the parties' nondisclosure agreement.  *Id.*  Silverthorne moves for partial summary judgment on liability for the breach of contract claim arguing the only issue for trial is the amount of damages to award.  Dkt. 53.  The court concludes Sterling is entitled to summary judgment on the breach of contract claims.

      *i. Damages*

      The fourth element for a breach of contract claim in Texas is that the plaintiff must show damages sustained due to the breach.  *Pathfinder Oil*, 574 S.W.3d at 890.  Sterling moves for partial summary judgment on the breach of contract claims arguing there is no evidence Silverthorne has sustained damages due to the breach.  Dkt. 51.  The court agrees.

      Under Texas law, "damages for breach of contract are limited to 'just compensation for the loss or damage actually sustained.'"  *Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020) (quoting *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952)).  Sterling has the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  Sterling satisfies its burden by presenting the deposition of Johannes Douma, a Casillas employee, who states Casillas decided not to license the seismic data before the disclosure took place.  Dkt. 51, Ex. 1.  Thus, the burden shifts to Silverthorne to set forth specific facts showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).

      Silverthorne cites *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753 (10th Cir. 2009) for the proposition that the disclosure of seismic data alone establishes damages for a breach of contract claim in the amount of the data's fair market value multiplied by the number of disclosures.  Dkt. 68.  Silverthorne then presents Sterling's interrogatory responses (Dkt. 68, Ex. 2)

and Johannes Douma's deposition (Dkt. 68, Ex. 3) to establish the disclosure of the unlicensed seismic data to as many as 22 parties. Silverthorne also presents Bart Wilson's declaration to establish Silverthorne's "stock in trade" is licensing seismic data. Dkt. 68, Ex. 1. Bart Wilson also states he can testify to the market rate of that data. *Id.* The court finds Silverthorne's evidence insufficient to show a genuine issue for trial because it is based on the incorrect legal standard.

Silverthorne's reliance on *Kerr-McGee* is misplaced. *Kerr-McGee* is a Tenth Circuit opinion applying Colorado law. 565 F.3d at 758. Under Texas law, Silverthorne must show a "loss or damage actually sustained." *See Atrium Med. Ctr.*, 595 S.W.3d at 192. "[R]emote, contingent, speculative, or conjectural" damages are insufficient to support a breach of contract action. *See City of Dallas v. Villages of Forest Hills, L.P., Phase I*, 931 S.W.2d 601, 605 (Tex.App.—Dallas 1996, no writ). Actual damages are what is "necessary to put [the non-breaching party] in the same economic position in which it would have been had the contract not been breached." *See Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 760 (Tex.App.—El Paso 2000, no pet.).

Silverthorne does not present evidence to show that it would be in a different economic position had the contract not been breached. *See* Dkt. 68. Instead, Silverthorne argues the breach alone establishes damages. *See id.* Essentially, Silverthorne's position is that it suffered damages in the form of lost licenses it hypothetically could have sold. *See id.* The Fifth Circuit has already rejected a similar argument that a hypothetical royalty could establish damages under Texas law. *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 278 (5th Cir. 2009). In *CQ, Inc.*, the Fifth Circuit stated it "requires numerous speculative leaps to conclude that the parties would have negotiated an ongoing licensing agreement absent a breach of the Confidentiality Agreement." *Id.* The Fifth

7

Circuit's reasoning in *CQ, Inc.* is applicable to the instant motion. *See id.* Silverthorne asks the court to make speculative leaps to conclude that the companies who allegedly received the seismic data would have licensed that data at market rates absent the breach. *See* Dkt. 68. Texas law does not support such an approach. *See CQ, Inc.*, 565 F.3d at 278.

Sterling's interrogatory responses, Johannes Douma's deposition, and Bart Wilson's Declaration are evidence a breach occurred, but they do not serve as evidence for damages sustained due to the breach. *See* Dkt. 68, Exs. 1–3. Thus, the evidence Silverthorne presents is insufficient to raise a genuine issue of material fact for trial. The issue of damages is dispositive for all the breach of contract claims, and the court need not address Sterling's additional argument regarding Silverthorne's trilateral agreement theory. Therefore, Sterling's motion for partial summary judgment (Dkt. 51) on the breach of contract claims is GRANTED. Accordingly, Silverthorne's motion for partial summary judgment (Dkt. 53) on liability for the breach of contract claims is DENIED.

### ii. Attorney's Fees

Sterling moves for attorney's fees as a prevailing party for the breach of contract claims as provided for under the terms of the nondisclosure agreement between the parties. Dkt. 51. The court will consider the award of attorney's fees after all claims have been resolved.

### 2. DTSA Claim

The elements of a DTSA claim are: (1) ownership of a trade secret; (2) misappropriation; and (3) use in interstate commerce. *See* 18 U.S.C. § 1836(b); *Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2021 WL 2701238, at *3 (E.D. Tex. July 1, 2021). Sterling moves for partial summary judgment on the DTSA claim arguing Silverthorne has no evidence that it

owns the seismic data claimed to be a trade secret. Dkt. 34. Silverthorne moves for partial summary judgment on the issue of liability for the DTSA claim arguing the only question for trial is the amount of damages to award. Dkt. 53. Finally, Sterling moves for partial summary judgment on the issue of exemplary damages and attorney's fees for the DTSA claim arguing Silverthorne has no evidence that Sterling willfully and maliciously misappropriated a trade secret. Dkt. 51. The court concludes there are genuine disputes of material fact for all three motions.

   i. *Ownership of the Seismic Data*

Ownership is an essential element of a DTSA claim. *See Focused Impressions, Inc. v. Sourcing Grp., LLC*, No. 19-CV-11307-ADB, 2020 WL 1892062, at *4 (D. Mass. Apr. 16, 2020) (collecting cases). Sterling moves for partial summary judgment on the DTSA claim arguing Silverthorne has no evidence it owns the seismic data at issue. Dkt. 34. The court disagrees.

The DTSA defines the owner of a trade secret as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. § 1839(4). The parties disagree on how to determine a party has rightful legal or equitable title to seismic data. *See* Dkts. 34, 47, 48. Analogizing to the rule of capture, Silverthorne argues that ownership belongs to the entity which generates the seismic data without regard to the owner of the relevant the mineral estate. Dkt. 47. The rule of capture "gives a mineral rights owner title to the oil and gas produced from a lawful well bottomed on the property, even if the oil and gas flowed to the well from beneath another owner's tract." *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 13 (Tex. 2008). The rule of capture was created because "oil and gas are fugac[i]ous minerals that will migrate without regard to property lines." *Browning Oil Co. v. Luecke*, 38 S.W.3d 625, 632 (Tex.App.—Austin 2000, pet. denied). "It is a rule of expedience" justified in

part because a neighboring "landowner can protect himself from drainage by drilling his own well." *Garza*, 268 S.W.3d at 14.

While the proposed analogy is innovative, Silverthorne does not explain why seismic data is entitled to the same rule of expedience despite the lack of a similarly fugacious nature or a correlative right to acquire seismic data. *See* Dkt. 47. Further, Silverthorne points to no legal authority where a court has applied the rule of capture in the proposed manner. *See id.* Thus, the court rejects Silverthorne's argument that the rule of capture applies to seismic data.

Sterling argues that the owner of a mineral estate owns any related seismic data, and that ownership can then be transferred by agreement with a license or permit. Dkts. 3, 48. The Fifth Circuit, applying Louisiana law, stated that "a mineral lessee or permittee ordinarily acquires a valuable exclusive property right in data derived from its geophysical survey." *Musser Davis Land Co. v. Union Pac. Res.*, 201 F.3d 561, 569 (5th Cir. 2000). The Texas Supreme Court cited *Musser* with approval while examining whether seismic data qualifies as a trade secret under Texas law. *In re Bass*, 133 S.W.3d 735, 740–41 (Tex. 2003). Thus, the court concludes Sterling's approach is correct, and ownership of seismic data belongs to the owner of the mineral estate, which can then be transferred by agreement with a license or permit.

Sterling argues there is no evidence Silverthorne owns the seismic data. Dkt. 34. Sterling bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Sterling meets this burden by pointing to Silverthorne's refusal to disclose the relevant permits in discovery. *See* Dkt. 34, Ex. 1 (objecting to request for production 6 as overbroad). From this, a reasonable jury could conclude Silverthorne does not own the seismic data because ownership of the seismic data is dependent on an agreement from the owner of the

mineral estate.  Thus, the burden shifts to Silverthorne to set forth specific facts showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).

Silverthorne offers four pieces of evidence to support the proposition that it owns the seismic data.  The first piece of evidence is a contract assigning rights to the seismic data from Silverthorne II to Silverthorne.  Dkt. 47, Ex. 3-A.  The second is an agreement between Silverthorne II and Dawson.  Dkt. 47, Ex. 2-A.  The third is the declaration of Bart Wilson stating that Silverthorne II acquired ownership of the seismic data from Dawson and then subsequently transferred that ownership to Silverthorne.  Dkt. 47, Ex. 3.  The fourth is the affidavit of Steven Jumper, the president and CEO of Dawson, which asserts Dawson acquired all necessary permits through a contract with Goldstar Land Services, LLC, and that those permits cover the South Scoop Survey.  Dkt. 47, Ex. 2.

Sterling objects to all four pieces of evidence on multiple grounds.  First, Sterling argues that only the original permits satisfy the best evidence rule.  Dkt. 48.  The best evidence rule requires a party to produce "an original writing . . . in order to prove its contents." Fed. R. Evid. 1002.  However, Silverthorne is not offering evidence to prove the contents of the permits.  Instead, Silverthorne is offering evidence that it has an ownership interest in the seismic data.  Thus, the best evidence rule does not apply.

Sterling next argues the assignment of rights from Silverthorne II to Silverthorne is insufficient evidence because it is a quitclaim deed.  Dkt. 48.  For a quitclaim deed to be evidence of ownership, a party must present additional evidence of what the grantor owned.  *United States v. Orr*, 336 F. Supp. 3d 732, 754 (W.D. Tex. 2018).  However, this objection is insufficient to

exclude the agreement as Silverthorne also presents evidence that Silverthorne II owned the seismic data. *See* Dkt. 47, Exs. 2-A, 3, 3-A.

Sterling argues that the agreement between Silverthorne II and Dawson is not relevant evidence because it does not reference the South Scoop Survey. Dkt 34. Even without explicitly referencing the South Scoop Survey by name, a reasonable jury could find the agreement supports Silverthorne's ownership claim. *See* Dkt. 47, Ex. 2-A. Further, the affidavit of Steven Jumper states that this agreement includes the South Scoop Survey. *See* Dkt. 47, Ex. 2.

Sterling objects to the declaration of Bart Wilson as conclusory, containing legal conclusions, not based on personal knowledge, and supported by hearsay. Dkt. 48. The relevant parts of the declaration explain the agreements between Dawson, Silverthorne II, and Silverthorne. Dkt. 47, Ex. 3. These statements are not conclusory in nature, nor are they legal conclusions. *See id.* Further, the declaration contains sufficient facts—specifically establishing Bart Wilson is the owner of Silverthorne II and Silverthorne—to conclude that the relevant statements were based on personal knowledge. *See id.* Finally, the relevant parts of the declaration do not contain out-of-court statements offered to prove the truth of the matter asserted. *See id.* Thus, they are not hearsay. *See* Fed. R. Evid. 801(c). Sterling explains the basis of its hearsay objection by arguing Bart Wilson "makes statements regarding knowledge he could have only learned through hearsay." Dkt. 48. Thus, Sterling's hearsay objection is a second argument for lack of personal knowledge. However, the facts asserted in the declaration sufficiently support that Bart Wilson's statements were based on personal knowledge. *See* Dkt. 47, Ex. 3.

Sterling likewise objects to the affidavit of Stephen Jumper as conclusory, containing legal conclusions, not based on personal knowledge, and supported by hearsay. Dkt. 48. The relevant

parts of the affidavit explain how Dawson hired Goldstar Land Services, LLC to acquire the necessary permits and how those rights were transferred to Silverthorne II. Dkt. 47, Ex. 2. These statements are not conclusory in nature, nor do they contain legal conclusions. *See id*. Further, the affidavit contains sufficient facts—specifically establishing Stephen Jumper is the president and CEO of Dawson—to conclude that the relevant statements were based on personal knowledge. *See id*. Finally, the relevant portions of the affidavit do not contain out-of-court statements offered to prove the truth of the matter asserted. *See id*. Thus, they are not hearsay. *See* Fed. R. Evid. 801(c). Again, Sterling argues lack of personal knowledge by declaring Stephen Jumper "makes statements . . . he could have only learned through hearsay." Dkt. 48. However, the facts asserted in the affidavit sufficiently support the conclusion that Stephen Jumper's statements were based on personal knowledge. *See* Dkt. 47, Ex. 2.

Accordingly, Sterling's objections to Silverthorne's evidence are overruled. The court finds that Silverthorne has set forth specific facts showing a genuine issue for trial. Therefore, Sterling's motion for partial summary judgment on the DTSA claim (Dkt. 34) is DENIED.

*ii. Whether the Seismic Data is a Trade Secret*

The elements of a DTSA claim are: (1) ownership of a trade secret; (2) misappropriation; and (3) use in interstate commerce. *Providence Title*, 2021 WL 2701238, at *3. Silverthorne moves for partial summary judgment on liability for the DTSA claim arguing the evidence shows no dispute of material fact on any element of the claim. Dkt. 53. The court disagrees.

The first element of a DTSA claim is ownership of a trade secret. *See Providence Title*, 2021 WL 2701238, at *3. "Whether a trade secret exists is a question of fact." *GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 492 (5th Cir. 2016). The owner of a trade

secret must take "reasonable measures to keep such information secret."  18 U.S.C. § 1839(3)(A).

Sterling provides evidence that Silverthorne disclosed the relevant seismic data to Casillas in an

email before the NDA with Sterling.  Dkt. 73, Exs. 2–3.  Sterling also points to the declaration of

Bart Wilson, where he admitted that Silverthorne asked Casillas to retain the disclosed data rather

than deleting it.  *See* Dkt. 47, Ex. 3.  Based on this evidence, a reasonable jury could find

Silverthorne has not taken reasonable measures to keep the seismic data secret based upon this

evidence.

Thus, there is an issue of material fact regarding ownership of the seismic data.  Therefore,

Silverthorne's motion for partial summary judgment on the DTSA claim (Dkt. 53) is DENIED.

### iii.  Willful and Malicious

A plaintiff may recover exemplary damages and attorneys' fees on a DTSA claim if a trade

secret was "willfully and maliciously misappropriated."  18 U.S.C. § 1836(b)(3)(C)–(D).  Sterling

moves for partial summary judgment on the issue of exemplary damages and attorneys' fees for

the DTSA claim arguing there is no evidence it "willfully and maliciously" misappropriated the

seismic data.  Dkt. 51.  The court disagrees.

The DTSA does not define the terms "willful" or "malicious."  *Steves & Sons, Inc. v. Jeld-*

*Wen, Inc.*. 988 F.3d 690, 726 (4th Cir. 2021).  District courts have looked to the relevant state's

uniform trade secret act for the definition "inasmuch as the two are substantively identical." *Trent*

*P. Fisher Enters., LLC v. SAS Automation, LLC*, No. 3:20-CV-216, 2021 WL 1209637, at *5 (S.D.

Ohio Mar. 31, 2021); *see e.g. Brightview Grp., LP v. Teeters*, No. CV SAG-19-2774, 2021 WL

1238501, at *19–20 (D. Md. Mar. 29, 2021) (applying the definition of "malicious" under the

Maryland Uniform Trade Secrets Act); *Citcon USA, LLC v. RiverPay, Inc.*, No. 18-CV-2585-NC,

2020 WL 5365980, at *5 (N.D. Cal. Sept. 8, 2020) (applying the definition of "malicious" under the California Uniform Trade Secrets Act).  Texas amended the Texas Uniform Trade Secrets Act ("TUTSA") in 2017 to define "willful and malicious misappropriation" as an "intentional misappropriation resulting from the conscious disregard of the rights of the owner of the trade secret."  Tex. Civ. Prac. & Rem. Code § 134A.002(7).

Sterling urges the court to adopt the definition of "malicious" applied by the Fourth Circuit in *Steves & Sons*.  Dkt 51.  In *Steves & Sons*, the Fourth Circuit upheld a jury instruction that defined "malicious" as "an intent to cause injury or harm to the plaintiff" under Texas common law.  988 F.3d at 726–27.  However, the Fourth Circuit's reasoning agreed with the approach of looking to the state statute to obtain a definition.  *See id.* at 727 ("cases interpreting those statutes show that they offer competing definitions, each based on how "malice" is defined in other contexts under the relevant state's laws").  The "intent to cause injury or harm" definition was upheld because the lawsuit in *Steves & Sons* was filed before the 2017 amendment to the TUTSA.  *Id.*  Thus, the court applied the definition of "malice" from Texas common law.  *Id.*  That critical procedural posture is not present here as the instant lawsuit was filed and relates to conduct occurring after the 2017 amendment took effect.  *See* Dkt. 13.  Therefore, this court concludes it is appropriate to apply the amended TUTSA definition of an "intentional misappropriation resulting from the conscious disregard of the rights of the owner of the trade secret."  *See* Tex. Civ. Prac. & Rem. Code § 134A.002(7).

Sterling argues that Silverthorne has no evidence it "willfully and maliciously" misappropriated the seismic data.  Dkt. 34.  Sterling bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  Sterling fails to meet

this initial burden because it relies on the incorrect definition of "willful and malicious." *See* Dkt. 51. Further, even if Sterling could carry its burden under the correct definition, Silverthorne has presented evidence that Sterling consciously disregarded Silverthorne's rights. *See* Dkt. 68. Silverthorne provides the declaration of John Fortier regarding the way Silverthorne communicated what data Sterling was authorized to disclose to Casillas. Dkt. 53, Ex. A. Silverthorne also provides an email from John Fortier to Nick Grenfell containing information about what data Sterling was authorized to disclose to Casillas. Dkt. 68, Ex. 4. This evidence indicates Sterling knew what data was protected and ought not to have been disclosed to Casillas. *See id.* Based on this evidence, a reasonable jury could find Sterling consciously disregarded Silverthorne's rights when it nevertheless disclosed unauthorized data to Casillas.

Thus, there is a genuine dispute on an issue of material fact. *See Fordoche*, 463 F.3d at 392. Therefore, Silverthorne's motion for partial summary judgment on exemplary damages and attorneys' fees for the DTSA claim (Dkt. 53) is DENIED.

## IV. CONCLUSION

For the reasons provided, the court finds no reason to strike Silverthorne's filings. Further, the court concludes there are genuine issues of material fact regarding the DTSA claim, but not for the breach of contract claims. Therefore, it is ordered that:

1. Sterling's motion for partial summary judgment (Dkt. 34) is DENIED;

2. Sterling's motion for partial summary judgment (Dkt. 51) is GRANTED IN PART AND DENIED IN PART:

a. The motion is GRANTED in relation to the breach of contract claims, and the award of attorney's fees under the parties' nondisclosure agreement will be considered after all claims have been resolved;

b. The motion is DENIED in relation to the exemplary damages and attorneys' fees for the DTSA claim;

3. Silverthorne's motion for partial summary judgment (Dkt. 53) is DENIED;

4. Sterling's objection to Silverthorne's motion for partial summary judgment and motion to strike (Dkt. 73) is DENIED;

5. Sterling's motion to strike Silverthorne's reply brief (Dkt. 83) is DENIED.

Signed at Houston, Texas on October 7, 2021.

_____
Gray H. Miller
Senior United States District Judge