United States District Court
Southern District of Texas
**ENTERED**
October 26, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SILVERTHRONE SEISMIC, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:20-CV-02543** |
| | § | |
| **STERLING SEISMIC SERVICES,** | § | |
| **LTD.,** | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM & ORDER

Defendant Sterling Seismic Service, Ltd. ("Defendant") filed a Motion to Exclude Bart Wilson's Opinion Testimony (the "Motion"). ECF No. 142. After considering the Motion, briefings, arguments made by both parties during hearings, and the applicable law, the Court **DENIES** Defendant's Motion to Exclude for the reasons explained below.

### I.   BACKGROUND

Plaintiff Silverthorne Seismic, LLC ("Plaintiff") is a "geophysical company whose principal business is to license seismic data to oil and gas exploration companies." ECF No. 13 at 3. Plaintiff licensed seismic data from its South Scoop survey to a third-party oil and gas operator, Casillas Petroleum Resource Partners II, LLC ("Casillas"). Casillas then hired Defendant, a seismic data processing company, to process the data.

This case involves Defendant's alleged disclosure of unlicensed seismic data owned by Plaintiff to Casillas. The case was previously before the Honorable Gray Miller, who granted Defendant's motion for partial summary judgment on Plaintiff's breach of contract claims. *See Silverthorne Seismic, LLC v. Sterling Seismic Servs., Ltd.,*

1

No. CV H-20-2543, 2021 WL 4710813, at *4 (S.D. Tex. Oct. 7, 2021). The remaining claims in this lawsuit arise under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq*. Plaintiff seeks damages, including reasonable royalty damages, under the DTSA for Defendant's alleged misappropriation of its alleged trade secret seismic data. Defendant asserts a bad faith counterclaim under the DTSA as well as the affirmative defenses of waiver, estoppel, and release.

Defendant's present Motion before the Court seeks to exclude the lay witness trial testimony of Plaintiff's President, Bart Wilson. ECF No. 142. The Motion requires the Court to resolve the parties' disagreement over the proper standard for calculating reasonable royalty damages under the DTSA. On September 27, 2023, this Court held a hearing on the Motion. During the hearing, the Court made a preliminary ruling that reasonable royalty damages should be based on what these parties would have agreed to as a fair price for licensing Plaintiff's alleged trade secret. *See Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974). The Court requested supplemental briefing from the parties before making a final ruling on the matter. *See* Minute Entry dated 09/27/2023; ECF Nos. 152, 153.

At a Pretrial Conference held on October 4, 2023, the Court affirmed its preliminary ruling on the standard for measuring reasonable royalty damages. In response, Plaintiff asked this Court to continue the jury trial scheduled to begin on October 10, 2023, issue a written order on its ruling, and certify that order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Defendant opposed this request. The Court took the matter under advisement. *See* Minute Entry dated 10/04/2023; *see also* ECF No. 158. The Court then issued an Order continuing the jury trial pending

2

resolution of outstanding issues. ECF No. 159. This Memorandum and Order represents the Court's written final opinion on its reasonable royalty ruling and the admissibility of Wilson's testimony.

## II. DISCUSSION

### A. Standard for Calculating Reasonable Royalties

Plaintiff seeks to recover a reasonable royalty for Defendant's alleged misappropriation of its seismic data. A reasonable royalty is a measure of damages authorized by the DTSA for the unauthorized disclosure or use of a trade secret. 18 U.S.C. § 1836(b)(3)(B). The Fifth Circuit has recognized that a reasonable royalty is the "appropriate measure of damages where the secret has not been destroyed, where the plaintiff is unable to prove specific injury, and where the defendant has gained no actual profits by which to value the worth to the defendant of what it misappropriated." *Carbo Ceramics, Inc. v. Keefe*, 166 F. App'x 714, 723 (5th Cir. 2006) (citing *University Computing Co. v. Lykes–Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974)).

Plaintiff disclosed Bart Wilson as a lay witness who will testify at trial in support of its reasonable royalty damages. At the core of the parties' dispute over the admissibility of Wilson's testimony is the question of the proper standard for calculating reasonable royalty damages. *See* ECF Nos. 142, 146, 147. The "royalty is calculated based on what a willing buyer and seller would settle on as the value of the trade secret." *Carbo Ceramics*, 166 F. App'x at 723. Parties disagree over who the appropriate "willing buyer" is in this inquiry.

At his second deposition, Wilson testified that his opinion is that Plaintiff should be able to recover $489,450 as a reasonable royalty. ECF No. 142 at 86-87. He reached

that number by multiplying the 15.06 square miles of unlicensed data that Defendant allegedly delivered to Casillas by $32,500, the amount he contends is the fair market value to license a square mile of the South Scroop survey. *Id*. Wilson admitted that he did not know whether Defendant (a seismic processor) would have paid $32,500 per square mile—rather, he believes "an oil and gas company that is seeking to develop minerals would have paid $32,500 per square mile to license the unlicensed area." *Id.* at 45.

Defendant disputes Wilson's calculation, arguing that the "willing buyer" in the reasonable royalty inquiry is a seismic processor such as Defendant (i.e., a "case-specific" willing buyer inquiry). *See* ECF No. 142 at 10 ("[T]he proper measure of a reasonable royalty is the price Silverthorne and Sterling would have agreed to for Sterling to license the alleged trade secret.") Plaintiff, in contrast, argues that a reasonable royalty is based on what Plaintiff would have accepted as a price to license its data to "a willing buyer and intended user of the trade secret – typically exploration companies and others in the hydrocarbon industry that use seismic data." ECF No. 146 at 9.

In support of its position, Defendant points to the language used by the Fifth Circuit in *University Computing Co.*, 504 F.2d, the leading common law case for reasonable royalty analysis. In *University Computing Co.*, the Fifth Circuit stated that the "proper measure" of a reasonable royalty is "to calculate what **the parties** would have agreed to as a fair price for licensing **the defendant** to put the trade secret to the use the defendant intended at the time the misappropriation took place." 504 F.2d at 539 (emphasis added). The court went on to lay out five non-exhaustive factors that a trier of fact should consider when calculating a fair licensing price, had the parties agreed:

> the resulting and foreseeable changes in **the parties'** competitive posture; that prices past purchasers or licensees may have paid; the total value of the **secret to**

**the plaintiff**, including the plaintiff's development costs and the importance of the secret to the plaintiff's business; the nature and extent of **the use the defendant intended** for the secret; and finally whatever other unique factors in the particular case which might have affected **the parties' agreement**, such as the ready availability of alternative processes.

*Id.* (emphasis added). Defendant maintains that this language contemplates the specific parties to the litigation and what they would have agreed to as a fair price for licensing the trade secret. For instance, the fourth factor in the *Univ. Computing Co.* list is "the nature and extent of the use the defendant intended for the secret." 504 F.2d at 539. As Defendant notes, "[i]f it was just any willing licensee's use, then the defendant's use would be irrelevant." ECF No. 147 at 6; *see also Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1189 (10th Cir. 2014) ("[I]t is surely important when setting a reasonable royalty award to account for the scope of the license the defendant assumed for himself . . . . [T]he nature of the defendant's 'use' of the trade secret matters a great deal in the reasonable royalty analysis.").

Defendant cites to several other circuits that have adopted the case-specific language in *Univ. Computing Co.* when defining how to measure reasonable royalties in trade secret misappropriation cases. *See, e.g.*, *Storagecraft Tech. Corp.*, 744 F.3d at 1188–89 ("[A] reasonable royalty award seeks to estimate the fee the defendant would have had to pay, after negotiation, to secure a lawful license for the trade secret he unlawfully assumed for himself."); *AirFacts, Inc. v. Amezaga*, 30 F.4th 359, 368 (4th Cir. 2022) ("[T]he proper measure is to calculate what the parties would have agreed to as a fair price for licensing the defendant to put the trade secret to the use the defendant intended at the time the misappropriation took place.") (quoting *Univ. Computing Co.*, 504 F.2d at 539); *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142, 151 (2d Cir.

1996) ("By means of a suppositious meeting between the parties, the court calculates what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred.") (internal quotation marks omitted) (citing *Univ. Computing Co.*, 504 F.2d at 539).

According to Plaintiff, the buyer in a reasonable royalty calculation is a *willing* buyer "desiring to use a trade secret." ECF No. 146 at 7. The buyer cannot be a seismic processing company such as Defendant because: 1) processors do not license seismic data and therefore cannot be a hypothetical willing buyer, and 2) "there is no legitimate market for stolen trade secrets; thieves do not have a baseline value of what they are willing to pay, so that cannot possibly be the measure of reasonable royalty damages." *Id.* at 9. Plaintiff argues that Defendant "seeks to define 'reasonable royalty' as something that cannot and does not exist and thereby escapes liability for its wrongful conduct." *Id.* at 6.

Like Defendant, Plaintiff mobilizes the Fifth Circuit's decision in *University Computing Co* in support of its position. *See, e.g.*, ECF No. 152. In *University Computing Co.*, the Fifth Circuit looked to a patent infringement case, *Egry Register Co. v. Standard Register Co.*, 23 F.2d 438 (6th Cir. 1928), as a starting place for explaining how to calculate a reasonable royalty. The Fifth Circuit summarized the *Ergy* standard as "a willing buyer-willing seller test." *Univ. Computing Co.*, 504 F.2d at 537. Plaintiff also points to the Fifth Circuit's conclusion that "every case requires a flexible and imaginative approach to the problem of damages" and "is controlled by its own peculiar facts and circumstances." ECF No. 152 at 1-2 (citing *Univ. Computing Co.*, 504 F.2d at 538). Lastly, Plaintiff urges the Court to consider the Fifth Circuit's statement that when

6

damages are uncertain, "we do not feel that that uncertainty should preclude recovery; the plaintiff should be afforded every opportunity to prove damages once the misappropriation is shown." *Univ. Computing Co.*, 504 F.2d at 539.

Plaintiff asserts that the Fifth Circuit's announcement in *University Computing Co.* that the proper measure of a reasonably royalty is "what the parties would have agreed to as a fair price for licensing the defendant" only applies when the defendant profits from the misappropriation. ECF No. 152 at 2. When profits cannot be proven, Plaintiff argues that *University Computing Co.* stands for the proposition that the "willing buyer-willing seller" standard applies. *Id.* at 3. However, the Court finds this cannot be an accurate restatement of the Fifth Circuit's decision because the defendants in *University Computing Co.* made no profits from their use of the misappropriated trade secret. *See Univ. Computing Co.*, 504 F.2d at 536 ("Because the defendants failed in their marketing efforts, no actual profits exist by which to value the worth to the defendants of what they misappropriated.").

Moreover, Plaintiff does not cite to any cases in which a court has held that the "willing buyer" is "any willing buyer," detached from the parties to the litigation. Plaintiff relies on an unpublished North Carolina district court case, *Herrmann Int'l, Inc. v. Herrmann Int'l Eur.*, No. 1:17-CV-00073-MR, 2021 WL 861712 (W.D.N.C. Mar. 8, 2021). That case was decided before the Fourth Circuit defined reasonable royalty in *AirFacts, Inc.*, 30 F.4th. Moreover, *Herrmann* is easily distinguishable from the instant case: In *Hermann*, the district court found that it did not need to speculate about the reasonable fee to which a hypothetical buyer and seller would have agreed for the use of plaintiffs' intellectual property because the parties to the litigation had previously

negotiated royalties, which defendants had paid for many years before breaching the parties' agreement. *Herrmann Int'l, Inc.*, 2021 WL 861712, at *20. The court found that the royalties set forth in the agreement were reasonable for the purposes of calculating plaintiffs' damages. *Id.* That is clearly different from the present case, in which there is no prior licensing agreement between the parties that the Court can rely on to determine a fair licensing price for the seismic data. ECF No. 146 at 9.

Plaintiff's main argument seems to be that it would "never be able to prove damages" under the standard espoused by Defendant because Defendant "does not license seismic data in its business." ECF No. 152 at 3. The Court finds the Fourth Circuit's decision in *AirFacts* instructive on this point. In that case, an employer, AirFacts, developed accounting software for airlines. *AirFacts, Inc.*, 30 F.4th at 361. After resigning from AirFacts, a former employee applied to a job at a non-competitor travel agency, and in his application, he sent two flowcharts that he had created for AirFacts as a sample of his work product. *Id.* at 362. AirFacts sued the former employee for misappropriation of its trade secrets.

The Fourth Circuit instructed the district court to calculate reasonable royalty damages by applying the Fifth Circuit's *University Computing Co.* factors to determine what a fair licensing price for the flowcharts would have been. *Id.* at 369. On remand, the district court found that AirFacts had not proven that there was any fair licensing price for the employee's disclosure of the flowcharts. *AirFacts, Inc. v. De Amezaga*, No. CV DKC 15-1489, 2022 WL 17584258, at *7 (D. Md. Dec. 12, 2022). Applying the *University Computing Co.* factors, the district court found that Plaintiff's competitive posture had not been affected by the disclosure of the flowcharts to a non-customer/non-

8

competitor company, *id.* at *7-9, that AirFacts did not license its flowcharts and therefore there was no evidence of a past license that was commensurate with what the defendant had appropriated, *id.* at *9-11, that the disclosure had not destroyed the value of the flowcharts to AirFacts, *id.* at *11, and that defendant did not intend to use the flowcharts in any way that was harmful to AirFacts, *id.* at *12.

The obvious difference between *AirFacts* and the present cases is that in *AirFacts,* there was no market or past licenses for the flowcharts whatsoever, whereas in the present case, there *is* an existing market for seismic data—just not one in which Defendant is a licensee. However, the fact that the defendant in *AirFacts* would not have licensed the flowcharts did not preclude the Fourth Circuit from pursuing a case-specific inquiry. Rather, the task was to determine what—if any—a fair licensing price for disclosing the trade secret would have been had the parties agreed through an analysis of each *University Computing Co.* factor.

The Court is not persuaded that it should abandon the case-specific language used by the Fifth Circuit and adopted by other circuits. Accordingly, the Court holds that the proper measure of a reasonable royalty analysis is "what the parties would have agreed to as a fair price for licensing the defendant to put the trade secret to the use the defendant intended at the time the misappropriation took place." *University Computing Co.*, 504 F.2d at 539. Stated in terms of this case, this means that "the proper inquiry is what Silverthorne and Sterling would have agreed to for Sterling to use the alleged trade secret. It is not what Silverthorne would have agreed to for an operating company to use the alleged trade secret." ECF No. 147 at 4. Despite Plaintiff's assertions to the contrary, this holding does not automatically bar Plaintiff from proving damages if it shows

misappropriation. As the Fifth Circuit has stated, a plaintiff does not need to prove that the defendant would have actually agreed to the price that the plaintiff thinks is fair—that is too tall a burden on the plaintiff. *See Univ. Computing Co.*, 504 F.2d at 544. Instead, like the plaintiff in *AirFacts*, Plaintiff here must use the *University Computing Co.* factors (changes in competitive posture, plaintiff's valuation of the trade secret, and so on) to attempt to fulfill its burden of proving damages.

**B.  Admissibility of Wilson's Lay Witness Testimony**

Wilson's testimony is only admissible if it qualifies as admissible lay witness opinion under Federal Rule of Evidence (FRE) 701. Judge Miller previously denied Plaintiff leave to designate Wilson as an expert witness, finding that Plaintiff had not been diligent and sought to amend its expert witness designation only "after the close of discovery and with multiple dispositive motions pending." ECF No. 87 at 3-4.

Defendant posits numerous grounds for excluding Wilson's lay witness opinion on reasonable royalty damages: (1) it is based on technical and specialized knowledge, making it inadmissible under FRE 701, ECF No. 142 at 9-10, (2) it is not based on personal knowledge and is not helpful to the jury in deciding an issue of fact, *id.* at 11-12, (3) it is based on a mathematical impossibility, *id.* at 12-13, and (4) it is not admissible under the property owner rule, described more fully below, *id.* at 13-16. Defendant also argues that Wilson's opinions should be excluded entirely because Plaintiff failed to disclose them when asked in an interrogatory. *Id.* at 16-18. The Court assesses each asserted ground in turn.

**a.  Legal Standard**

FRE 701 states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Under FRE 701, "a lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury." *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997) (internal quotation marks omitted). "If these criteria are met, alleged flaws in a lay-opinion witness's perception are not grounds for excluding the testimony but instead are fodder for cross-examination." *Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 563 (S.D. Tex. 2015).

The FRE 701 Committee Note suggests that the Rule, which was amended in 2000 to prevent parties from admitting expert testimony disguised as lay opinion, continues to permit the "owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." Fed. R. Evid. 701, Committee Notes to 2000 Amendments. "Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Id.*

The Fifth Circuit has recognized that a witness's "position as company president permits her a broader range of testimony than a traditional lay witness would possess when testifying to matters concerning [the witness's] business." *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 737 (5th Cir. 2010). For instance, a business

11

owner or officer is competent to provide lost profit testimony under FRE 701 "if the witness has direct knowledge of the business accounts underlying the profit calculation." *Mississippi Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002).

While an owner or officer may testify to industry practices and pricing as a lay witness, Rule 701 does not give such witnesses "license to testify about all aspects of the industry or business." *Metro Hosp. Partners, Ltd.*, 84 F. Supp. at 564. As the court explained in *Metro Hosp. Partners*:

> An owner or highly placed executive may testify to what his broad responsibility and familiarity with the company or industry have taught him. But if that owner or executive tries to apply general industry or business knowledge to areas or matters about which he or she lacks information or experience, that opinion cannot be admitted under Rule 701 because it is not based on personal knowledge and would instead have to be based on specialized knowledge.

*Id.*

### b. Whether Wilson's reasonable royalty opinion is inadmissible under FRE 701 because it is based on technical and specialized knowledge

Defendant first argues that Wilson's reasonable royalty opinion is inadmissible under FRE 701 because it is based on technical and specialized knowledge. In his second deposition, Wilson agreed that his "reasonable royalties opinion is based on decades of experience in the land seismic data industry." ECF No. 142 at 61. Wilson stated that in arriving at his opinion that the fair market value of a square mile of seismic data is $32,500, he considered past licensing fees, his "history and knowledge of the area," which oil and gas drilling companies are in the area, how much drilling activity is happening in the area, and the "future market" of oil and gas pricing. *Id.* at 87-88. Defendant argues that "[a]djusting for all of those factors is not something that a nonexpert can do." *Id.* at 10. When asked if anyone could figure out the $32,000 number,

Wilson responded "I don't know. I don't know who else has the knowledge I have in the region." *Id.* at 44. Also, Wilson admitted that did not know whether Defendant (a seismic processor) would have paid $32,500 per square mile, *id.* at 45, and that he has never licensed data to a standalone seismic processing house such as Defendant, *id.* at 42.

Plaintiff responds by stating that reasonable royalty testimony is not necessarily technical or scientific because the licensing of seismic data is Wilson's "stock in trade." ECF No. 146 at 16. According to Plaintiff, "Wilson relies on his own personal involvement in seismic license negotiations and transactions to formulate his opinion on a reasonable royalty. He should be allowed to testify as to the reasonable royalty for that trade secret based on his personal knowledge, experience and observations." *Id.*

At least one court in the Southern District of Texas has allowed testimony on reasonable royalty damages from a lay witness. *See Seitz v. Envirotech Sys. Worldwide Inc.*, No. CIV. A. H-02-4782, 2008 WL 656513, at *5 (S.D. Tex. Mar. 6, 2008). In that case, the witness, David Seitz, was the CEO of the company claiming that the defendant's tankless water heater infringed four of plaintiff's patents. Seitz had twenty years of experience in corporate finance and had also been involved in the electric water heater business for close to twenty years. *Id.* at *4. The court found that Seitz's opinions on lost profits and reasonable royalties were inadmissible as expert opinion under Rule 702 but were admissible as a lay opinion under FRE 701 "based on [Seitz's] personal knowledge of his company's sales and the market for tankless electric water heaters." *Id.* at *6; *see also Mississippi Chem. Corp.*, 287 F.3d at 37 (holding that a layman can "express an opinion even on matters appropriate for expert testimony" if the witness has

13

knowledge of the facts underlying the opinion and the opinion has a rational connection to those facts) (quoting *Soden v. Freightliner Corp.*, 714 F.2d 498, 511 (5th Cir.1983)).

There are also cases in which a district court has found that a lay witness if not competent to provide testimony as to reasonable royalty damages under FRE 701. For instance, in a trade secret misappropriation case under the Texas Uniform Trade Secret Act, a district court held that neither plaintiff's President/Founder nor plaintiff's Chief Operating Officer/Chief Financial Officer/Chief Technology Officer could provide lay opinion testimony as to plaintiff's reasonable royalty damages because they "fail[ed] to relay their own observations, namely their particularized knowledge of Plaintiff's historical revenue before and after the alleged misappropriation, and instead act[ed] as economic experts by examining other companies' projected data." *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. A-14-CA-00847-SS, 2016 WL 6084179, at *4 (W.D. Tex. May 6, 2016).

Drawing from these cases, the Court holds that, so long as Wilson testifies based on his personal knowledge, observations, and experience serving as Silverthorne's President and licensing seismic data to oil and gas drilling companies, he is qualified to give a lay opinion on reasonable royalty damages under FRE 701. The scope of his opinion has limits: While a witness's "position as company president permits her a broader range of testimony than a traditional lay witness would possess when testifying to matters concerning [the witness's] business," *Versai Mgmt. Corp.*, 597 F.3d at 737, FRE 701 does not give such witnesses "license to testify about all aspects of the industry or business," *Metro Hosp. Partners, Ltd.*, 84 F. Supp. at 564. If an "owner or executive tries to apply general industry or business knowledge to areas or matters about which he

14

or she lacks information or experience, that opinion cannot be admitted under Rule 701 because it is not based on personal knowledge and would instead have to be based on specialized knowledge." *Metro Hosp. Partners, Ltd.*, 84 F. Supp. at 564. Thus, Wilson is not competent to provide an opinion on a hypothetical licensing negotiation between Plaintiff and a seismic data processor such as Defendant. As Wilson clearly admitted, he has never licensed data to a standalone seismic processing house. He does not have personal knowledge of or experience transacting with seismic processors, and therefore any opinions he has regarding how much Defendant would pay to license the seismic data at issue are inadmissible under FRE 701.

### c. Whether Wilson's reasonable royalty opinion is inadmissible because it is irrelevant

Defendant next argues that Wilson's reasonable royalty opinion should be excluded because it is not based on personal knowledge and is not helpful to the jury in deciding an issue of fact and is therefore "irrelevant." ECF No. 142 at 11; *see, e.g.*, Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). Defendant states:

> The fictitious transaction [Wilson] is opining on is what an oil and gas operating company—a company that drills wells—would be willing to pay. It is undisputed that Sterling does not drill oil and gas wells. In addition, Wilson admitted that he has zero experience licensing seismic data to a processing company like Sterling. So he lacks personal knowledge on what a company like Sterling would pay to license the data. . . . Thus, his opinion is irrelevant because the issue at hand is what Sterling would have agreed to pay, not what a random oil and gas operator would agree to pay.

ECF No. 142 at 1-2.

Plaintiff's response is that the fictitious transaction is based on what a willing buyer would pay—here, an oil and gas exploration company—and therefore Wilson's testimony is relevant to the damages calculation. ECF No. 146 at 9-10.

The Court held above that the "willing buyer" is a case-specific inquiry, and thus Plaintiff's argument is not meritorious. However, as the Fifth Circuit instructed, aggrieved plaintiffs should not be precluded from presenting their "best evidence on damages," which for Plaintiff here may be past licensing deals to oil and gas operators. *Univ. Computing Co.*, 504 F.2d at 544. The solution is not to exclude Wilson's opinion as irrelevant, but to allow Defendant to refute Plaintiff's damage calculations through cross examination and rebuttal testimony. *See id.* at 545.

### d. Whether Wilson's reasonable royalty opinion is inadmissible because it is based on mathematic impossibility

Defendant contends that Wilson's reasonable royalty opinion should be excluded because it based on "mathematical impossibility." ECF No. 142 at 12. According to Defendant, "Wilson's reasonable royalty opinion is based off Casillas receiving 15.06 square miles of unlicensed data. But the undisputed evidence shows that Casillas, at most, could have only received 10.503 square miles of unlicensed data." *Id.* Plaintiff responds that "[t]he components of the damage calculations and how each party advocates for a given number is a classic fact issue. Sterling can present its contrary mathematical computation at trial, to the extent evidence exists to support it." ECF No. 146 at 26-27. The Court agrees with Plaintiff that Defendant's objection on this ground is not a basis under law to exclude Wilson's reasonable royalty opinion.

### e. Whether Wilson's reasonable royalty opinion is inadmissible under the property owner rule

Defendant next objects to Wilson's reasonable royalty opinion on the ground that it is inadmissible under the property owner rule. "[T]he general principle, acknowledged in this circuit, [is] that the owner of property is qualified by his ownership alone to testify

as to its value." *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 433 (5th Cir. 1982); *see also* Fed. R. Evid. 701, Committee Notes to 2000 Amendments (suggesting that Rule 701 permits the "owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert"). Defendant argues that the property owner rule does not apply for four reasons:

> First, the measure of a reasonable royalty is not the value of the trade secret. Second, Silverthorne cannot prove that it owns the seismic data. Third, the value of seismic data is not something that the property owner rule was intended to compass. Fourth, Wilson's opinions are unreliable and conclusory.

ECF No. 142 at 13.

Whether Plaintiff owns the seismic data is one of the three elements of a DTSA claim that Plaintiff will have to prove by a preponderance of the evidence at trial. *See* 18 U.S.C. § 1836(b)(1). Defendant argues that Plaintiff cannot prove that it owns the seismic data because it cannot satisfy the best evidence rule. ECF No. 142 at 14. The best evidence rule states that "[a]n original writing . . . is required in order to prove its contents." Fed. R. Evid. 1002. Defendant claims that the only evidence that can be used to prove ownership of the data are the original seismic permits, but this Court has excluded those permits from evidence. *See* ECF No. 124. Defendant made the same argument in its Motion for Partial Summary Judgment before Judge Miller, and Judge Miller overruled Defendant's objection. *See Silverthorne Seismic, LLC*, 2021 WL 4710813, at *7. Plaintiff offered four pieces of evidence to support its ownership of seismic data: a contract assigning rights to the seismic data from Silverthorne II to Silverthorne, an agreement between Silverthorne II and Dawson, a declaration of Wilson stating that Plaintiff acquired ownership rights from Silverthorne II, and an affidavit by

the president of Dawson asserting it acquired all necessary permits covering the area at issue. *Id.* at *6. Judge Miller found that the best evidence rule does not apply because "[Plaintiff] is not offering [this] evidence to prove the contents of the permits. Instead, Plaintiff is offering evidence that it has an ownership interest in the seismic data." *Id*. This Court agrees with Judge Miller's ruling: Plaintiff is not trying to prove the content of the permits via other evidence, and Defendant has not pointed to any caselaw that says that *only* permits can be used to establish ownership. Thus, the Court rejects Defendant's argument that Plaintiff cannot prove ownership because it cannot satisfy the best evidence rule.

Defendant next argues that Wilson's market value testimony is unreliable and conclusory because Wilson "cannot explain why $32,500 per square mile is an appropriate amount" for licensing a square mile of seismic data. ECF No. 147 at 13. Defendant asserts that the highest licensing fee for South Scoop survey data was $31,000 per square mile. *See* ECF No. 142 at 20. The difference between $31,000 and $32,500 is not significant enough for the Court to find Wilson's testimony "unreliable and conclusory." Moreover, in Wilson's second deposition, he discussed a licensing deal in 2022 in which a company paid $32,500 per square mile for 21.11 square miles of seismic data. ECF No. 142 at 77, 84. Lastly, Plaintiff contends that "Wilson has produced rate sheets, licenses, and other records which reflect the foundation of his reasonable royalty opinions." ECF No. 146 at 25. While Wilson may not have thoroughly explained in his deposition why $32,500 is the appropriate fair market value for the data at issue in this case, this potential gap hardly renders his opinion "speculative or conclusory." ECF No. 147 at 13. If anything, it may go to the credibility and weight of Wilson's opinion—and,

as noted above, Defendant is free to refute Wilson's proposal of $32,000 as the fair market value of the data through cross-examination and rebuttal testimony. *See, e.g.*, *Metro Hosp. Partners, Ltd.*, 84 F. Supp. 3d at 563 ("If the criteria [of FRE 701] are met, alleged flaws in a lay-opinion witness's perception are not grounds for excluding the testimony but instead are fodder for cross-examination.").

Defendant's remaining arguments under this section are repetitive of earlier arguments and unavailing. For instance, Defendant contends that the "property owner rule is not a basis for admitting Wilson's reasonable royalty opinion because a reasonably royalty is not measured by lost profits or the value of the trade secret." ECF No. 147 at 11. However, the Fifth Circuit has not limited the testimony of an owner or officer of a business to lost profits or the value of property. To the contrary, the Fifth Circuit has permitted much broader testimony from such witnesses. *See, e.g.*, *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003); "[R]ule 701 does not preclude testimony by business owners or officers on matters that relate to their business affairs. Indeed, an officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert."); *see also Metro Hosp. Partners, Ltd*., 84 F. Supp. 3d at 564 ("An owner or highly placed executive may testify to what his broad responsibility and familiarity with the company or industry have taught him.").

To conclude, the Court does not find basis under the property owner rule to exclude Wilson's reasonable royalty opinion.

### f. Whether all of Wilson's opinions should be excluded because Plaintiff failed to disclose them when asked in an interrogatory

Lastly, Defendant argues that all of Wilson's opinions should be excluded because Plaintiff failed to comply with the requirement under FRCP 26(e) to supplement

or correct its response to an interrogatory in which Defendant sought Wilson's opinions and the basis for them. ECF No. 142 at 17.

FRCP 26 provides that a party that has responded to an interrogatory must supplement or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). If a party fails to disclose or supplement a response as required by FRCP 26(e), the party is not allowed to use that information or witness "at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The court is authorized to impose additional or alternative sanctions, including, for instance, ordering payment of reasonable expenses caused by the failure and informing the jury of the party's failure. *Id.* Below is the interrogatory at issue and Plaintiff's answer:

> Interrogatory No. 20: For any fact witness from which Silverthorne intends to elicit opinion testimony in support of its reasonable royalty damages, provide (1) a complete statement of all opinions the fact witness will express and the basis and reasons for them, and (2) a description of the facts or data considered by the witness in forming the opinions.

> Answer: Silverthorne objects to Sterling's request for "all opinions the fact witness will express" given that it is impossible to predict all of the opinions expressed until the fact witness is asked questions during trial. However, Silverthorne anticipates that Bart Wilson will testify concerning his knowledge of the seismic data license market in Oklahoma during the relevant time period and the license fees Silverthorne was able to obtain for its seismic in the open market and in the region in the time period in question. Wilson will testify that seismic data has the same fair market value within the Oklahoma oil producing region and across the entire South Scoop seismic survey and is not valued or priced based on where it is located within the survey. Wilson is also expected to opine on the reasons Silverthorne, as well as other seismic owners may provide discounts to certain customers from the fair market value based on other considerations, and why those discounts do not apply to customers in the general market. Mr. Wilson bases his opinions on his experience in licensing seismic data in Oklahoma during

the past 28 years, his day to day involvement in the oil and gas industry in Oklahoma, and his personal experience in determining market rates for seismic based on market demand, costs of acquisition, and other factors.

ECF No. 142 at 34. Defendant claims that this "the answer did not actually provide Wilson's opinions, it just provided topics he would testify on, which is not responsive to the request." *Id.* at 18.

Plaintiff responds that Defendant's complaints about this discovery request are untimely. According to Plaintiff, it objected and responded to Defendant's Third Set of Mixed Discovery Requests, including Interrogatory No. 20, on July 10, 2023, and Defendant never contacted Plaintiff's counsel about any perceived inadequacies in Plaintiff's responses or filed a motion to compel. ECF No. 146 at 28-29. Plaintiff cites to many out-of-circuit cases in which courts found that a party essentially had "waived" its right to raise discovery non-compliance. However, FRCP 37 does not specify a time limit in which a motion must be filed, and the cases Plaintiff cites are easily distinguishable from this case. *See, e.g.*, *Butler v. Pettigrew*, 409 F.2d 1205, 1207 (7th Cir. 1969) (finding that plaintiff waived its rights to raise complaints about defendant's failure to fully answer interrogatories when plaintiff did not present the issue to the trial court until after the trial and entry of judgment on the merits). Moreover, as Defendant points out, its "motion is timely because it was filed before this Court's deadline to file a motion to exclude." ECF No. 147 at 14. Taken together, the Court does not find Plaintiff's timeliness argument persuasive.

The Court concludes that excluding Wilson's testimony entirely because Defendant thinks that Plaintiff did not fully respond to Interrogatory No. 20 is a

disproportionately harsh sanction under these circumstances. The Court defers ruling on whether another sanction would be appropriate.

### III. CONCLUSION

In sum, the Court holds that (1) the proper measure of a reasonable royalty analysis is "what the parties would have agreed to as a fair price for licensing the defendant to put the trade secret to the use the defendant intended at the time the misappropriation took place," *University Computing Co.*, 504 F.2d at 539, and (2) Defendant's Motion to Exclude Bart Wilson's testimony should be **DENIED**. Wilson is permitted to offer his lay witness opinion on reasonable royalty damages provided that it complies with the requirements of FRE 701.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 25th of October, 2023.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE